UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MYRA TANKSLEY,

      Plaintiff,                             Case No. 2:11-cv-38
                                               JUDGE GREGORY L. FROST
      v.                                        Magistrate Judge E.A. Preston Deavers

FRANKLIN COUNTY, ET AL.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment filed by Defendants (ECF No. 21), a memorandum in opposition filed by Plaintiff (ECF No. 23), a reply memorandum filed by Defendants (ECF No. 30), and a sur-reply filed by Plaintiff (ECF No. 31);

(2) a motion for summary judgment filed by Plaintiff (ECF No. 22) and a memorandum in opposition filed by Defendants (ECF No. 29);

(3) a motion to strike Plaintiff's sur-reply filed by Defendants (ECF No. 32); and

(4) a motion for leave to file a sur-reply filed by Plaintiff (ECF No. 33).

For the reasons that follow, the Court **GRANTS** Plaintiff's motion for leave to file a sur-reply (ECF No. 33), **DENIES AS MOOT** Defendants' motion to strike Plaintiff's sur-reply (ECF No. 32), **GRANTS** Defendants' motion for summary judgment (ECF No. 21), and **DENIES** Plaintiff's motion for summary judgment (ECF No. 22).

1

## I. Background

Plaintiff, Myra Tanksley, is the mother of Marquis Tanksley. Pursuant to a 2003 court order from the Franklin County Common Pleas Court, Marquis's father paid child support directly to Plaintiff. In December 2008, Franklin County Children's Services ("FCCS") filed a complaint in Franklin County Common Pleas Court, alleging that Marquis was a neglected child. Several days later, the state court placed Marquis in the custody of FCCS, which filed a motion to set support, but subsequently dismissed the action and then later refiled it under a new case number. Upon refiling, FCCS filed a new motion for Plaintiff to pay her incoming child support to FCCS. At that time, FCCS also filed a motion to change the payee from Plaintiff to FCCS, which would effectively redirect the money paid by Marquis' father from Plaintiff and to FCCS.[1]

---

[1] Uncontradicted evidence indicates that when custody has been awarded to FCCS, a division of FCCS conducts a IV-E eligibility determination. IV-E is a provision of the Social Security Act that governs whether Franklin County Child Support Enforcement Agency ("FCCSEA") is entitled to prosecute the request for support on behalf of the State of Ohio, or whether FCCS is entitled to pursue support on behalf of the agency. If the child is held to be IV-E eligible, FCCSEA is charged with prosecuting the enforcement of child support for remittance to the state. If the child is held to be ineligible, FCCS may pursue support for remittance to the agency for the period during which the child is in custody. Referrals are made to FCCSEA on all children in custody, regardless of IV-E eligibility. Once FCCS submits a referral to FCCSEA, the eligibility determination is pending. Here, Defendants assert that FCCS made a determination of ineligibility under IV-E due to the lack of cooperation of Plaintiff. Eligibility determinations require income information provided by the parents, and according to Defendants, Plaintiff failed to provide such information. Plaintiff disputes this contention and asserts that she provided the court-appointed attorney who was involved in that process with information, but insists that attorney failed to provide effective representation. The dispute as to whether and when Plaintiff provided the information is immaterial to today's dispositive analysis; what is material is that the state actors proceeded as they did on a flawed premise.

The Franklin County Common Pleas Court granted the motion to change the payee and dismissed the pending motion for direct support because the child support obligation was less than the Social Security payments FCCS was receiving on behalf of Marquis. As a result of this order, the Franklin County Child Support Enforcement Agency ("FCCSEA"), the statutory agent for Title IV-D of the Social Security Act, opened a case in the State of Ohio Support Enforcement Tracking System ("SETS"). The clerk entering the information into SETS interpreted the state court's order as a support order against Plaintiff as opposed to an order that redirected funds to FCCS. An FCCSEA attorney was assigned to file legal actions in the case, and an FCCSEA enforcement officer was assigned to monitor enforcement.

Plaintiff was subsequently informed of a wage withholding order sent to her former employer. She contacted FCCSEA enforcement officer Jon Sherman, who asked her to send him a copy of the magistrate's order dismissing the motion for direct support. Plaintiff did not have the order at the time and did not follow up with Sherman. SETS indicated a delinquency on Plaintiff's case because no payments had been made. Sherman set aside the default status so that no notice of default would issue to Plaintiff. FCCSEA attorney Mark Rhea then filed another motion to set support as against Plaintiff, which was later dismissed after Plaintiff regained custody of her son. Prior to the dismissal, Plaintiff sent a document titled "Notice of Tort Claim" to the Franklin County Commissioners and the Ohio Department of Job and Family Services by certified mail. In that notice, Plaintiff attempted to present her arguments and her request for relief and described the actions taken. Despite Plaintiff's efforts, SETS automatically generated a notice of default because no support payments had been received from Plaintiff. FCCSEA requested a federal income tax offset from Plaintiff's income tax refund pursuant to Ohio

Revised Code § 3123.81, and Plaintiff's income tax refund of $849.00 was intercepted and applied to her accumulating arrearage.

Plaintiff eventually mailed a letter to President Obama about her situation. That communication was apparently forwarded to the Federal Office of Child Support Enforcement, which informed Plaintiff that the error would be corrected. FCCSEA subsequently refunded the intercepted tax refund, and FCCS sent Plaintiff a letter admitting that her case had been created in error and explaining why the preceding actions were taken.

Plaintiff filed a Complaint on January 14, 2011, naming as defendants Franklin County; the three sitting Franklin County Commissioners–Paula Brooks, Marilyn Brown, and John O'Grady; FCCSEA Director Susan Brown; FCCSEA caseworker Jon Sherman; FCCS Director Eric Fenner; FCCS attorney Tiffany Hostetler; and FCCSEA attorney Mark Rhea. (ECF No. 5.) The Complaint alleges that the erroneous creation of several motions for child support against Plaintiff was the result of an official policy and practice whereby employees are instructed to create a child support case even though a child support order may not exist. Although Plaintiff's *pro se* pleading is not as clear as it could ideally be, it is apparent that she is alleging deprivation of her constitutional rights in violation of 42 U.S.C. § 1983. Plaintiff has sued the individual defendants in their individual as well as official capacities.

Each side has filed a motion for summary judgment. (ECF Nos. 21, 22.) Defendants have also field a motion to strike (ECF No. 32) a sur-reply that Plaintiff filed in connection with their summary judgment motion, and Plaintiff has filed a motion for leave to file the sur-reply

(ECF No. 33). The briefing on all of the motions has closed, and the motions are now ripe for disposition.

## II. Sur-reply Motions

Because Defendants' motion to strike and Plaintiff's motion for leave to file a sur-reply can affect the record, this Court is obligated to address those filings before ruling on the motions for summary judgment. *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions"). Citing her *pro se* status as explaining her purportedly unintentional violation of the Local Civil Rule's prohibition on engaging in sur-reply briefing without leave of court, Plaintiff asserts that the sur-reply targets issues or material that Defendants raised for the first time in their summary judgment reply memorandum. *See* S. D. Ohio Civ. R. 7.2(a)(2). Defendants have not filed a memorandum in opposition disputing this contention and simply state in conclusory fashion in their earlier-filed motion to strike "that Plaintiff has not shown good cause for filing a Surreply or that she is addressing matters raised in Defendants' Reply." (ECF No. 32, at 2.) The Court **GRANTS** Plaintiff's motion for leave to file a sur-reply (ECF No. 33) and **DENIES AS MOOT** Defendants' motion to strike (ECF No. 32).

## III. Summary Judgment Motions

**A. Standard Involved**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

Defendants move for summary judgment on Plaintiff's claim under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, in order to prevail on her § 1983 claim, Plaintiff must show that, while acting under color of state law, Defendants deprived her of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003). In her motion for summary judgment, Plaintiff clarifies her § 1983 claim by explaining that Defendants allegedly violated her 14th Amendment rights to property, due process, and equal protection.

Defendants concede they made a mistake. They argue that they are nonetheless entitled to summary judgment because Plaintiff cannot meet the evidentiary burden necessary to establish § 1983 municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), because the claims against Commissioners Brooks, O'Grady, and Brown and FCCSEA Director Brown are frivolous given their lack of individual involvement, and because Defendants are entitled to qualified immunity. In her memorandum in opposition (ECF No. 23), Plaintiff identifies five allegedly genuine disputes of material fact: (1) the date the child support case was opened; (2) the date of the state magistrate judge's child support order; (3) whether Plaintiff has been made whole; (4) whether Defendants violated any laws; and (5) the date upon which custody of Marquis was granted to Plaintiff. For three reasons, none of these non-material issues preclude summary judgment in favor of Defendants.

The first reason is that Defendants are entitled to qualified immunity, which protects officials from individual liability in connection with the performance of discretionary functions. *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994). The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In addressing the potential applicability of qualified immunity, a court asks two questions: (1) "whether, on the plaintiff's facts, there has there been a violation." and (2) "whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)). A court "may exercise its 'sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.' " *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Qualified immunity thus provides that an official can be found to have violated the Constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing the particular conduct involved. The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable [official] would have known").

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon*, 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).

Plaintiff has not met her burden. There can be little debate over whether what transpired here presents embarrassing bureaucratic errors if not outright incompetence. The question is not whether Defendants should be disturbed by the sloppiness that happened–they certainly should–but whether the governmental actions present technically reasonable mistakes so as to shield Defendants from liability. Given the underlying confusion resulting from the misinterpretation of what the state court ordered, there is no basis to conclude here that the state actors acted unreasonably even if erroneously. The governmental actors were doing their jobs, even if they were doing them poorly or based on a flawed premise. Qualified immunity applies to the individual capacity aspect of this case.

The second reason select defendants are entitled to summary judgment is because Plaintiff has failed to produce evidence of individual involvement in impermissible conduct on the part of Defendants. There is no evidence presented that Commissioners Brooks, O'Grady, and Brown, FCCSEA Director Brown, or FCCS Director Fenner did anything here other than hold their respective positions. There is also no evidence that Defendants Sherman, Rhea, or

Hostetler did anything to violate Plaintiff's rights. The causative error was on the part of a non-defendant FCCSEA employee.

The third reason entitling Defendants to summary judgment is that Plaintiff has failed to point this Court toward the requisite custom, policy, or practice for § 1983 liability under *Monell*. The official capacity claims are ultimately claims against Defendant Franklin County. Such an entity is not liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. Rather, as the United States Supreme Court has explained, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. There is no evidence that Plaintiff's constitutional rights were violated pursuant to any official policy, custom, or practice. Without such a predicate foundation, there is no basis for liability here.

Although Plaintiff presents conclusory allegations and argues that the institutional policy of opening new child support cases for children in FCCS custody was "a moving force" that resulted in the violation of her constitutional rights, Plaintiff fails to present evidence that any component of that essentially generic, across-the-board policy targeted, approved, or encouraged erroneous collection activities such as what occurred here. (ECF No. 22, at 3.) In other words, there may indeed be a policy of opening support cases, but there is no evidence that any part of that policy led to the allegedly unconstitutional conduct here. An error in the implementation of a neutral policy led to Plaintiff's troubles, not any part of the policy itself. Thus, regardless of any ultimately immaterial errors in the dates cited by the parties as to the creation of or events in

the support case, the dispositive analysis remains the same: there is no basis for *Monell* liability here.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for leave to file a sur-reply (ECF No. 33), **DENIES AS MOOT** Defendants' motion to strike Plaintiff's sur-reply (ECF No. 32), **GRANTS** Defendants' motion for summary judgment (ECF No. 21), and **DENIES** Plaintiff's motion for summary judgment (ECF No. 22). The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

        /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE